Peelle, J.,
delivered the opinion of the court:
The claimant, a second lieutenant of Company D, Sixth Virginia Infantry (colored), organized and enrolled for the recent war with the Kingdom of Spain, bases his right of *229 action upon the act of March 26, 1898 (30 Stat. L., 420), as amended by the act of July 7, 1898 (30 Stat. L., 721), which act reads:
AN ACT providing for the payment and maintenance of volunteers during the interval between their enrollment and muster into the United
States service, and for other purposes.
Be it enacted, etc., That the pay and allowance of such of the volunteers as are received into the service of the United States under the act of Congress approved April 22,1898, and the acts supplemental thereto, shall be deemed to commence from the day on which they join for duty and are enrolled at the battalion, regimental, or State rendezvous: Provided, That troops about to embark for service in the Philippine Islands may, in the discretion of the Secretary of War, bo paid one month’s wages in advance prior to embarkation. (30 Stat. L., 420.)
The amended act reads as follows:
AN ACT to amend the act relating to pay of volunteer officers and soldiers.
Be it enacted', etc., That the act of Congress approved May 26, 1898, entitled “An act providing for the payment and maintenance of volunteers during the interval between their enrollment and muster into the United States service, and for other purposes,” be, and the same is hereb}'-, amended to read as follows:
That the pay and allowance of all officers and enlisted men of the volunteers received into the service of the United States under the act of Congress approved April 22, 1898, and the act supplemental thereto, shall be deemed to commence from the day on which they had their names enrolled for service in the Volunteer Army of the United States and joined for duty therein after having been called for by the governor on the authority of the President, and all officers and enlisted men who have not been so paid shall be so paid by the Pay Department of the Army, out of any moneys appropriated for the maintenance of the, Army: Provided, That troops about to embark for service in the Philippine Islands may, in the discretion of the Secretary of War, be paid one month’s wages in advance prior to embarkation. (2d Suppl. R. S., 887.)
It will be noted that the act of March 26 provides: That the pa}' and allowance of such of the volunteers as are received into the service of the United States * * * shall be deemed to commence from the day on which they joined for duty and are enrolled at the battalion, regimental, or State rendezvous; ” while the amendatory act of July 7 provides *230 that such pay and allowance as to “all officers and enlisted men” so received into the sendee of the United States “shall be deemed to coiximence from the day on which thejr had their names enrolled for service in the V olunteer Army of the U nited States and joined for duty therein after having been called for by the governor on the authoi’ity of the President.”
The question presented therefore is: On what day did'the claimant, after he was called for by the governor on the authority of the President, enroll his name for service in the Volunteer Army of the United States and join for duty tbei’ein ?
Under the first proclamation of the President, issued April 23, 1898, calling for volunteers pursuant to the act of April 22, 1898, for service in the war with Sixain, the g-overnor of the State of Vix-ginia was, on April 25, informed by the Secretary of War that the number of troops required from his State, under the call, was three regiments of infantry, to servo for two years.
In response thereto, on-the same day, the governor informed the Secretary of War, among other things, as follows:
‘ ‘ There are 4 regiments and 4 battalions of infanti-y in the State, consisting of 46 companies. I propose to select 36 of these companies to form 3 regiments of 12 companies each.”
On the same dajr the governor issued a pi-oclamation calling-on the volunteer organizations of the State of Virginia to hold themselves in readiness to be mustered into the sendee of the United States to serve wherever they might be ordered by the President, and directing the commanding officei-s of the companies to recruit their ranks to the full number required b,y law as speedily as possible.
Thereafter, on April 28,1898, the governor caused General Order No. 10 to be issued, set forth in the findings, naming and designating the infantry companies which should constitute the second, third, and fourth regiments,, being the quota of troops required from the State under the call of the President, in which none of the colored troops in the State were included.
Thereafter, on May 25, 1898, the President of the United States issued a proclamation calling for an additional force of 75,000 men. Thereafter, on Maxr 30, the governor of Virginia was informed by the Adjutant-General of the Army that *231 the President was particularly anxious that the governor should cany into effect the scheme- giving colored men the opportunity to enter the service; and to that end he was advised that “tlio Secretary of TVar authorizes the organization of two battalions of four companies each, to maximum enlisted strength of 83 per company.”
Two days later, June 1, 1898, the governor caused to be issued Special Order No. 59, wherein it was, among other things, recited that “preparatory to a call from the President upon the governor for two battalions of infantry (colored) for service in the United States Volunteers, the commanding officers of the first and second battalions will at once take the necessary steps to recruit the companies of their respective battalions to 83 men per company.”
And further, it was provided that when each company had recruited to the number indicated that fact should be reported by telegraph.
In response to that order reports were made from time to time by the commanding officers of their respective battalions, and thereupon, June 20,1898, the governor caused to be issued General Order No. 14, set forth in the findings, whereby the first and second battalions of ■ infantry (colored) were designated to fill the call in response to the second proclamation of the President.
The claimant and his command, Company D, formed a part of said first battalion, and the claimant was mustered into the service of the United States August 1, 1898, since which date ho has been paid.
The act of May 26 (supra), which may be termed the original act, is entitled “An act to provide for the payanent and maintenance of volunteers during the interval between their enrollment and muster into the United States service.”
The meaning of that language, which is borne out by the language in the body of the act, is susceptible of but one meaning — that is to say, that the pay and allowance of the volunteers received into the service of the United States “shall lie deemed to commence from the day on- which they join for duty and are enrolled at the battalion, regimental, or State rendezvous;” thus recognizing that such volunteers are entitled to be paid under said act from the date of enrollment at their respective rendezvous within the State.
*232 The amendatory act of July 7 {supra) is more liberal and specific in this: That the pay and allowance of all officers and enlisted men so received into the service of the United States “shall be deemed to commence from the day on which thej^ had their names enrolled for service in the Volunteer Army of the United States after having been called for by the governor on the authority of the President.”
It will thus be seen that the claimant could not have had his name enrolled for service in the Volunteer Army of the United States until he was “ called for by the governor on the authority of the President.”
The findings show that the claimant and others were, as a matter of fact, enrolled April 23,1898, in response to General Order No. 8 issued by the governor on his own authority April 19, 1898, and prior to the proclamation of the President. That was not, however, a call “bj* the governor on the authority of the President,” as at that time no call for troops had been made by the President.
And while the governor, on June 1, 1898, caused Special Order No. 59 to issue, as set forth in the findings, preparatory to calling for the two battalions infantry (colored), he did not official^ call them into the service until June 20, 1898, when he issued General Order No. 14, specifically designating “ the first and second battalions of infantry (colored) as the commands to fill the call so made upon the State by the President-.”
When in response to that call by the governor the claimant enrolled or caused to be enrolled his name, i. e., entered his name on a register or roll for service in the Volunteer Army of the United States, and joined for duty, as the claimant appears to have done, and ho was subsequently mustered into the service, he thereby became entitled, under the act of July 7, to the pay and allowance of his grade from the date of his enrollment and joining for duty to the date of his muster into the service as aforesaid; and as the act provides that “all officers and enlisted men who have not been so paid shall be,” the claimant is entitled to recover the pajr of a second lieutenant from June 20 to July 31, 1898, amounting to one hundred and fifty-nine dollars and forty-five cents (§159.45), and judgment is ordered to be entered accordingly.